IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

|  |  |
|---|---|
| BOBBY JOE STONE;<br>TINA STONE BALLENTINE;<br>and PEGGY E. STONE<br><br>  Plaintiffs,<br><br>v.<br><br>KOCH FARMS OF GADSDEN LLC<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CV 1:12-3777-RBP<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

This cause comes on to be heard on the Motion to Dismiss filed by Koch Farms of Gadsden, LLC (Koch) on November 8, 2012.

The motion is directed at Counts Two, Three and Four of the plaintiffs' complaint and generally opposes any claim(s) for punitive damages.

### Discussion[1]

The court does not consider claim(s) purportedly against fictitious parties. The allegations in plaintiffs' complaint include:

(1) The plaintiffs own or have owned real estate in Cherokee County, Alabama which (is) (was) operated as a farm, including raising poultry.

(2) The plaintiffs entered into a "Poultry Production Agreement" with Koch.[2]

(3) The agreement provided that Koch would provide poultry flocks, feed, medication

---

[1] The court considers only the factual allegations in plaintiffs' complaint filed in the Circuit Court of Cherokee County, Alabama on September 28, 2012.

[2] No date of said agreement is alleged.

and other supplies to the plaintiffs, further, that plaintiffs would care, maintain and grow the flocks until Koch obtained them for processing.

(4)  Koch stopped sending plaintiffs flocks to be raised and cared for and specifically refused to do so "on or about September 28, 2010."

(5)  That if the plaintiffs had known that Koch would not honor its "promises," and agreement (no mention of "representations" here), they would have explored alternate avenues to maintain and fully operate the farm.

(6)  Because plaintiffs relied on the "representations" (appearing again) "once plaintiffs discovered that Koch would not honor its "agreement and promises" (note "agreement" and "promises" only), plaintiffs were not in a position to obtain flocks from other sources."  (There are no allegations of the efforts made).[3]

Counts

Count One is clearly a breach of contract claim only.  Its claim for punitive damages will be struck.  Count One alleges that the contract was in full force and effect.  Further that the contract was breached when Koch failed to provide additional flocks, *inter alia*, on or about September 28, 2010.

Counts Two and Three state purported fraud claims.  The purported fraud claims are stated in a conclusory fashion without factual detail.  No dates are stated; no specific statements are stated; there are no allegations of any persons making promises or "representations" other than those stated in the contract as earlier alleged.  The motion will be granted as to Counts Two and Three.  *See Target Media Partners Operating Co, LLC v Specialty Marketing Corp.* (Ala.

---

[3] At some points in the complaint the plaintiffs combine references to "promises" and "representations." Presumably they felt that the conclusory term "representations" was more appropriate for fraud claims than promises.

Dec. 21, 2012) and its favorable reference to Justice Gorman Houston's concurrence in *Hunt Petroleum Corp. v. State of Alabama*, 901 So.2d 1 (Ala. 2004). Justice Houston stated:

> "I recently discussed the difference between breach-of-contract and fraud claims in my special concurrence in *Dickinson v. Land Developers Construction Co.*, 882 So.2d 291 (Ala. 2003):
>
>> I write specially to address a particular problem: the confusion surrounding the difference between a claim alleging breach of contract and a claim alleging fraud. There is a distinct difference between the two claims but I fear that that distinction is all too often lost in Alabama. Simply put, *a plaintiff cannot convert the mere failure to perform or to fulfill a contractual promise into a fraud claim*, and that appears to be happening in this case.
>>
>> "Under Alabama law, a plaintiff can, in some instances, maintain a cause of action for fraud and breach of contract arising from the same general factual circumstances. See *Duepree v. Gulner*, 522 So.2d 242 (Ala. 1988). In *Deupree*, we held that the plaintiffs, who had signed a contract to purchase a Florida townhome from the defendant developer *but had not yet closed on the townhome*, could recover for both fraud and breach of contract based on the developer's representations to the plaintiffs that there would be no problems in acquiring the necessary governmental approval for a boat slip appurtenant to the property, when in fact there were substantial problems. 522 So.2d at 243-45. We held that there was evidence indicating that the plaintiffs would not have closed on the townhome had the defendant disclosed the truth about the governmental approval process, and we held that the plaintiff could recover for fraudulent suppression. 522 So.3d at 245. In reaching this holding we also noted that a plaintiff can recover for both breach of contract and fraud when the plaintiff has been fraudulently induced (through false statements about specific facts) into making a contract:

> "'"There are a number of situations in our law whereby a plaintiff may derive benefits from a contract and yet still recover for tortious action concerning the contract, such as misrepresentation and deceit. There is a line of cases wherein the facts show misrepresentations concerning the goods that the buyer purchases; e.g., a buyer purchases a horse that the seller maintains has to good eyes, and the buying later discovers that one the eyes is blind. In the type of situation [fraudulent inducement], the buyer need not forego the benefit received under the contract in order to sue for the misrepresentations. *See Mutual Sav. Life Ins. Co. v. Osborne*, 245 Ala. 15, 15 So.2d 713 (1943); *Moore v. Oneonta Motor Company*, 223 Ala. 510, 137 So. 301 (1931); *Fairbanks, Morse and Co. v. Dees*, 220 Ala. 41, 126 So. 624 (1929).'"

"*Deupree*, 522 So.2d at 244 (quoting *Nationol Sec. Fire & Cas. So. v. Vinson*, 414 So.2d 49, 50-51 (Ala. 1982)). While the *Deupree* decision characterized the alleged fraud at issue in that case as fraudulent suppression, 522 So.2d at 244 ('[w]e hold that the fraud alleged in this case was not fraud in the inception of the contract, but in fraudulent concealments after the contract was made'), given the fact that the plaintiffs had not yet closed on their townhome and the fact that they alleged that they would not have closed on the townhome if they had not been lied to, the fraud alleged in *Deupree* appears to favor a claim for fraudulent inducement (to close on the townhome and 'complete' the contract). Regardless, it is clear that *to assert a fraud claim that stems from the same general facts as one's breach-of-contract claim, the fraud claim must be based on representations independent from the promises in the contract and must independently satisfy the elements of fraud. Deupree*, 522 So.2d at 245.

"However, it is a universally held principle that the 'mere failure to perform a [contractual] promise does not constitute fraud.' *Joun Brown Automation, Inc. v Nobles*, 537 So.2d 614, 618 (Fla. Dist. Ct. App. 1989). In fact *a party to a contract may intentionally, and even in bad faith* (except in the insurance context), see *American Cast Iron Pipe Co. v. Williams*, 591 So.2d 854, 857 (Ala. 1991), *break a contractual promise without that action becoming a fraud or other tort.*"

4

*Also see U.S.F&G v. McKinnon*, 356 So.2d 600 (Ala. 1978). See also various cases cited by the defendant.

Count Four is also subject to the *Target* case. Counts Two, Three and Four will be dismissed. All punitive damage claims will also be dismissed.

This the 8th day of January, 2013.

_____
**ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE**